## Richmond

BURTON LUMBER CORPORATION

V.

ROBERT K. AUGHENBAUGH, ET AL.

Record No. 791585.

BURTON LUMBER CORPORATION

V.

RALPH DEMPSEY, ET AL.

Record No. 800928.

April 30, 1982.

Present: All the Justices.

*Michael A. Glasser (Bernard Glasser; Glasser and Glasser,* on brief), for appellant. (Record No. 791585.)

*William B. Smith (James B. Lonergan; Smith, Dickerson & Horne,* on brief), for appellees. (Record No. 791585.)

*Joseph J. Lawler (Bernard Glasser; Kellam, Pickrell & Lawler,* on brief), for appellant. (Record No. 800928.)

*James B. Lonergan (William B. Smith; Smith, Dickerson & Horne,* on brief), for appellees. (Record No. 800928.)

COMPTON, J., delivered the opinion of the Court.

The dispositive question in these cases is whether the respective trial courts erred in failing to rule as a matter of law that a materialman was entitled to recover from individual landowners the cost of lumber products incorporated into new homes.

Appellees Robert K. Aughenbaugh and Patricia S. Aughenbaugh, his wife, and Ralph Dempsey and Joan Dempsey, his wife, purchased Lot 3 in Lynnhaven Acres, located in Virginia Beach. Subsequently, they subdivided the parcel in order to construct separate dwellings. The Aughenbaughs acquired Lot 3A and the Dempseys took Lot 3B.

In early 1978, each couple separately entered into a contract with Precision Realty Inc., engaged in general real estate sales,

and Boyd & Boyd Construction Co., a builder of homes. Under the respective agreements, Precision, acting through Charles B. Arnett, its sales manager, was to supervise the construction and Boyd was to build the houses. Precision and Boyd were authorized by the owners to select the subcontractors and to purchase the materials needed to complete the dwellings.

The Aughenbaughs and the Dempseys each obtained construction financing. The proceeds were to be disbursed during construction, through an attorney for the owners, to Precision for payment by Precision of the costs of construction.

After the work commenced and late in the spring of 1978, Arnett asked George H. Burton, president of appellant Burton Lumber Corporation, to furnish the lumber, millwork, and other building materials for these and other jobs undertaken by Precision and Boyd. Burton agreed, upon condition that the property owners execute a standard Burton printed form, which, as we shall see, is the basis for the controversy in these cases.

After some lumber had been delivered to these two job sites, Arnett presented the forms to the owners to be executed. Mr. Aughenbaugh, a college graduate and an auditor for the United States General Accounting Office, and Mr. Dempsey, also a college graduate and "the loan servicing officer" of a federal savings and loan association, both read the respective forms and discussed their provisions with Arnett. Arnett assured them that execution of the documents was a mere "technicality" and repeated Burton's admonition that no further lumber would be delivered to the sites unless the forms were signed. Thereupon, during the summer of 1978, the Aughenbaughs and the Dempseys executed the separate forms labelled "Credit Application."

The following provision, central to these disputes, is included above the owners' signatures on the reverse side of the one-page form:

> "In consideration of credit being extended to the undersigned or anyone on his or their behalf, the undersigned agrees, without offset, to pay for the same in accordance with the terms of the invoices submitted, and 1-½% per month or 18% per annum finance charges on all invoices 60 days and older. The undersigned hereby waives the benefit of Homestead exemption as to any obligations and agrees, in the event any suit or legal proceedings are had hereon, to pay the cost

thereof including reasonable attorney's fees. It is agreed that all invoices and delivery tickets, whether signed or not, shall be deemed true and accurate unless alleged discrepancies are reported in writing to Burton Lumber Corporation within five (5) days of its date."

Upon receipt of the executed forms, Burton established separate accounts for the two jobs. Supplies were delivered to the sites during construction and the invoices for each delivery were sent to Precision.

Because of financial difficulties, Precision and Boyd abandoned the projects in late 1978 and early 1979. The homes were eventually completed and occupied by the respective property owners.

Burton was not paid for any of its products delivered to the job sites, all of which were incorporated into the dwellings. Thereupon, Burton proceeded against the owners individually, seeking recovery from the Aughenbaughs in the amount of $23,996.81 and from the Dempseys in the sum of $20,154.96.

The claim against the Aughenbaughs was based upon the "Credit Application" and was asserted during the course of an equity proceeding to enforce various mechanics liens against the property. The chancellor, upon motion of the Aughenbaughs, directed an issue out of chancery. The jury, responding to interrogatories propounded by the trial court in instructions, found that the "Credit Application" signed by the Aughenbaughs was not a promise to pay for material furnished by Burton in connection with construction of the residence; that the Aughenbaughs' signatures on the form were not procured by fraud perpetrated by Burton Lumber Corporation, or anyone acting on its behalf; that Burton did not extend credit in reliance upon the form; and that Burton was not entitled to judgment against the Aughenbaughs. Refusing Burton's request to rule in its favor as a matter of law, the chancellor adopted the verdict and findings of the jury in a September 1979 final decree granting judgment for the Aughenbaughs, from which we awarded Burton an appeal.

The claim against the Dempseys was likewise based upon the "Credit Application," and was asserted in an action at law tried to a jury. In a March 1980 order, from which we awarded Burton an appeal, the trial court entered judgment in favor of the Dempseys upon a jury verdict in their favor, overruling Burton's several motions that the trial court decide in its favor as a matter of law.

The significant facts, including the amounts due, are undisputed in both cases. Although the parties in the Aughenbaugh matter debate procedural issues dealing with the chancellor's decision to direct an issue out of chancery, although the Aughenbaughs assign cross-error, and although other provisions of the Burton form are challenged in both cases, it is unnecessary to decide those questions, given the view we take of the central issue common to both appeals. As we have already said, the dispositive question is: Did the trial court in each instance err in refusing to rule at the conclusion of all the evidence that Burton was entitled to recover as a matter of law? More precisely the issue is: Considering the facts and circumstances of each case, did the landowners enter into a binding agreement to pay Burton for the cost of materials in consideration of Burton extending them credit and delivering such materials to the job site? We answer both queries in the affirmative.

We reject the landowners' several contentions that there was no meeting of the minds; that the "Credit Application" was not a binding offer, and, if it was, Burton failed to accept it according to its specific terms; that the landowners did not know their offer had been accepted; and that Burton failed to extend credit upon the landowners' "Credit Application." The uncontradicted evidence shows these contentions are meritless.

Arnett, acting as agent for the landowners under their respective contracts with Precision and Boyd, selected Burton to supply the building materials for the two jobs. As a part of his duties as the property owners' agent, and not as Burton's agent, Arnett undertook to procure the owners' signatures on Burton's forms so that necessary lumber and millwork would be delivered in aid of construction. There is no suggestion in the evidence of fraud or oppressive conduct by Burton, or anyone acting in its behalf. Rather, the evidence simply shows the exercise by Mr. Burton of sound business judgment in attempting to obtain, as a condition to providing lumber on credit, the personal promise of the landowners to pay for the building material delivered to the job sites. Burton was apparently motivated by a lack of confidence in the financial stability of Precision and Boyd.

Aughenbaugh and Dempsey, both well-educated and holding responsible jobs, read the entire documents, and discussed them with Arnett prior to signing them and encouraging their wives to do likewise. It is true, as the landowners point out, that

many spaces on the front side of the printed forms, calling for financial data about the persons applying for credit, were left blank. It is also true, as the landowners observe, that other spaces on the reverse side of the forms, dealing with facts about the construction financing, were also not filled in. But that information was mere surplusage when the contractual aspects of the documents are considered. For example, the form clearly was designated a "Credit Application" for "Burton Lumber Corporation," it identified the landowners as "Applicant," it specified by lot number in "Lynnhaven Acres" the property which, "[t]his material will be used for," and it contained in legible print the disputed paragraph above the signatures of the respective landowners.

By executing the form, which contained sufficiently definite language to constitute a legally binding offer, "Applicants" promised that if credit was extended to them, *or anyone on their behalf,* they would pay for the same according to the terms of the invoices submitted within the designated time period. There was no requirement that the invoices be submitted directly to the property owners. Nothing in the language of the offer limited the promise to pay only for building materials that were delivered to the job site after the form was executed.

Thus, upon receipt of the executed forms, Burton by conduct accepted the offer and furnished the consideration for a legally binding contract. Two charge accounts were established, one for Lot 3A and the other for Lot 3B. Materials were regularly delivered to the job sites, a circumstance apparent to the owners because they observed the construction as it progressed. Invoices promptly were furnished to the agent for the owners.

In sum, the following evidence is undisputed. Burton would not have continued to supply material for the respective jobs unless the owners agreed to pay for it. The owners did, in fact, agree to pay as evidenced by their signatures on the forms. *Metro Realty of Tidewater, Inc.* v. *Woolard,* 223 Va. 92, 99, 286 S.E.2d 197, 200 (1982). Credit was extended. Supplies were delivered. Invoices were submitted. Consequently, the owners are bound by their contract.

For these reasons, we hold that both trial courts erred in failing to rule as a matter of law that Burton was entitled to recover in each case. Accordingly, the orders appealed from will be reversed and final judgment will be entered in favor of Burton against the

Aughenbaughs for $23,996.81, and against the Dempseys for $20,154.96.

*Reversed and final judgment.*